```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
ERIK WHITE,                                                 :
                                    Plaintiff,              :
                                                            :
                    v.                                      :
                                                            :
CITY OF NEW YORK, et al.,                                   :
                                    Defendants.             :
                                                            :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__8/17/2017__

16 Civ. 6183 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

Pro se Plaintiff Erik White commenced this action under 42 U.S.C. § 1983 against the City of New York, Assistant Deputy Chief of Corrections Karen Collins, Captain Korporan, Captain Antoine and former Correction Officer Carlos Santos, who is appearing pro se. Defendants move to dismiss the First Amended Complaint under Federal Rule of Civil Procedure 12(c). For the reasons that follow, Defendants' motions are granted.

**I.    BACKGROUND**

The facts below are drawn from the Complaint, the First Amended Complaint and Plaintiff's statements at the Rule 16 conference that was held on May 2, 2017. Given the "special solicitude" afforded pro se litigants, Plaintiff's factual allegations from all of these sources are considered to be a part of the Complaint, and these sources individually or together are referred to in this Opinion as the "Complaint." *See Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016); *see also White v. Schriro*, No. 16 Civ. 6769, 2017 WL 3268202, at *2 (S.D.N.Y. July 31, 2017) ("The court may also consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint.") (internal quotation marks omitted). All factual allegations are assumed to be true, and all reasonable inferences are drawn

in Plaintiff's favor as the non-moving party. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 199 (2d Cir. 2017).

This action arose from an incident that occurred in December 2015, while Plaintiff was a pretrial detainee at Riker's Island. Plaintiff was in protective custody in a special housing area, where he was segregated from other inmates. Defendant Officer Santos escorted Plaintiff's housing area to the barbershop. While Plaintiff was in the barbershop, Officer Santos allowed a group of adolescent inmates to enter and asked the adult inmates to allow the adolescents to get their haircuts first. Because Plaintiff was in protective custody, Officer Santos should not have exposed Plaintiff to other inmates in the barbershop, but he "wanted to save time and cut corners."

An altercation involving some of the adolescent inmates occurred in the barbershop. To restore order, unnamed officers wearing gas masks sprayed a chemical agent on the adolescents who were directly involved in the incident. Officers then ordered Plaintiff and the other inmates to lay face down on the floor, where Plaintiff came into contact with the chemical agent. Defendant Captain Korporan, the area captain, and Defendant Deputy Chief Collins, were among the senior prison officials who were present in the barbershop.

Plaintiff was brought to a holding cell in a decontamination intake area where Defendant Captain Antoine was the intake captain on duty. Deputy Chief Collins "had been present and fully aware of the situation" but she "soon became scarce without assuming control . . . ." While Plaintiff was in the holding cell, he "continued to hack uncontrollably as [he] breathed in the chemicals from [his] skin and [his] clothing." Plaintiff also "regurgitated phle[g]m and saliva, as well as endured breathing complications and dizziness." Plaintiff's distress was obvious, and

officers who are not defendants repeatedly inquired about Plaintiff's well-being and brought him water.

In the hours after the incident, Plaintiff continually asked prison officials, including Captain Antoine, for permission to take a shower and for medical attention. At some point that day, Defendant Korporan and an unnamed captain came to Plaintiff's holding cell and asked him to give a written statement regarding the incident. Plaintiff declined and again requested medical attention and a shower. Defendant Korporan told Plaintiff that the clinic was crowded with individuals who had been directly involved in the incident, "but she would see what she could do."

Approximately six hours after the incident, Plaintiff was taken to the clinic for medical treatment. He was taken back to the clinic some time that night "because of [his] condition" and prescribed Maalox and Ibuprofen. Plaintiff was returned to his housing area where he was locked in his cell for over 24 hours while the facility was on lockdown. He was permitted to shower only after the lockdown was lifted. Plaintiff suffers from eczema, which was exacerbated by the chemical agent. At the Rule 16 conference, Plaintiff stated that he was given a skin cream to alleviate his symptoms and "was okay after . . . about a week."

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed -- but early enough not to delay trial." The same standard that applies to motions to dismiss under Rule 12(b)(6) applies to motions under Rule 12(c). *See Mantena v. Johnson*, 809 F.3d 721, 727–28 (2d Cir. 2015). "[T]he only facts to be considered are those alleged in the complaint, and the court must accept them, drawing all reasonable inferences in the plaintiff's favor, in deciding whether the complaint alleges sufficient

facts to survive." *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016). To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

Courts must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, --- F.3d ----, No. 15 Civ. 2898, 2017 WL 3044626, at *2 (2d Cir. July 19, 2017) (citation omitted). "The policy of liberally construing pro se submissions is driven by the understanding that implicit in the right to self-representation is an obligation . . . of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Id.* (citation omitted).

### III. DISCUSSION

Construing the Complaint liberally, it seeks to allege a number of constitutional violations under 42 U.S.C. § 1983 for deliberate indifference to serious medical needs and safety, a violation of the Equal Protection Clause of the Fourteenth Amendment and municipal liability against the City for failure to train, as well as negligence under New York law. As explained below, the § 1983 claims are dismissed for failure to state a claim, and the Court declines to exercise supplemental jurisdiction over the state law claim.

**A. Federal Claims Under § 1983**

"Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks omitted). To establish a claim under § 1983, a plaintiff must show "(1)

that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color" of state law. *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (internal quotation marks omitted). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright*, 510 U.S. at 271. Here, the factual allegations in the Complaint can be construed to allege § 1983 claims of deliberate indifference to serious medical needs and safety, a violation of the Equal Protection Clause and municipal liability against the City of New York.

### a. Deliberate Indifference to Serious Medical Needs

The deliberate indifference claim is dismissed because the Complaint does not plead sufficient facts. To state a claim for deliberate indifference to serious medical needs under § 1983, a plaintiff must satisfy a two-prong test. The first prong is objective: "the alleged deprivation of adequate medical care must be sufficiently serious." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 139 (2d Cir. 2013) (internal quotation marks omitted). A court must consider "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006); *accord Candelario v. Quality Choice Corr. Healthcare*, No. 16 Civ. 2083, 2017 WL 3049553, at *4 (S.D.N.Y. July 18, 2017). To satisfy the first prong, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). The objective prong is the same regardless of whether the plaintiff is a pretrial detainee or a prisoner. *Feliciano v. Anderson*, No. 15 Civ. 4106, 2017 WL 1189747, at *10 (S.D.N.Y. Mar. 30, 2017) (citing *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017)).

5

The second prong is subjective and requires a court to consider the defendant's mental state. Under the second prong, "a defendant possesses the requisite *mens rea* when he acts or fails to act under circumstances in which he knew, or should have known, that a substantial risk of serious harm to the pretrial detainee would result." *Feliciano*, 2017 WL 1189747, at *13 (applying *Darnell* to a deliberate indifference to serious medical needs claim under § 1983). A defendant's "actions [must be] more than merely negligent." *Id.* (quoting *Salahuddin*, 467 F.3d at 280).

Plaintiff alleges that he came into contact with a chemical agent that caused him to cough uncontrollably, continually cough up phlegm and saliva, and suffer breathing complications, dizziness and eczema. The Complaint also describes the care that Plaintiff received -- medical attention within six hours of the incident; a second visit to the infirmary on the night of the incident (when he was prescribed Maalox and Ibuprofen); permission to shower to decontaminate himself approximately 24 hours later; and cream for his eczema. The Complaint does not allege that any of Plaintiff's symptoms were long-lasting or permanent.

Construing the alleged facts in Plaintiff's favor, the Complaint fails to satisfy the objective prong of the deliberate indifference test. Where, as here, "a prisoner alleges a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious . . . ." *Cuffee v. City of New York*, No. 15 Civ. 8916, 2017 WL 1134768, at *6 (S.D.N.Y. Mar. 27, 2017) (internal quotation marks omitted). "[A] short interruption of care, even if the underlying medical condition is serious, does not constitute a serious medical need where the 'alleged lapses in treatment are minor.'" *Id*. (alterations in

original) (quoting *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003)). "However, allegations that the defendant's delay in treating a minor or ordinary medical condition can nevertheless become a constitutional violation if the condition worsens [as a result of the delay] and creates a substantial risk of injury." *Id.* (internal quotation marks omitted and alterations in original).

Here, the basis for the deliberate indifference claim is that Plaintiff's medical treatment was delayed, not that it was inadequate. As pleaded, the delay that Plaintiff experienced does not rise to the level of a constitutional violation. *Feliciano*, 2017 WL 1189747, at *11 (quoting *Demata v. N.Y. State Corr. Dep't of Health Servs.*, 198 F.3d 233 (2d Cir. 1999) (unpublished)) ("Although a delay in providing necessary medical care may . . . constitute deliberate indifference, [the Second Circuit] has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment; ignored a 'life-threatening and fast-degenerating' condition for three days; or delayed major surgery for over two years."); *Valdiviezo v. City of New York*, No. 15 Civ. 3902, 2017 WL 1191528, at *4 (S.D.N.Y. Mar. 29, 2017) (same and collecting cases).

The Complaint does not allege that the delay in treatment caused or worsened Plaintiff's injury. *See, e.g.*, *Valdiviezo*, 2017 WL 1191528, at *5 (dismissing a deliberate indifference claim where plaintiff did not allege any injury as a result of the delay); *Smith v. City of New York*, No. 15 Civ. 7910, 2016 WL 7471334, at *4–5 (S.D.N.Y. Dec. 28, 2016) (dismissing a deliberate indifference claim where plaintiff failed to allege that an approximately four and a half hour delay "[]either caused []or exacerbated his medical condition" and collecting cases). Even assuming the chemical agent aggravated Plaintiff's eczema, the Complaint suggests that, at worst, the delay temporarily exacerbated Plaintiff's pre-existing skin condition, which itself does not constitute a serious medical need under Second Circuit law. *See, e.g.*, *Sledge v. Kooi*, 564

7

F.3d 105, 108 (2d Cir. 2009) (affirming grant of summary judgment, in part, because plaintiff's eczema, back pain, stomach disorders, allergies, and asthma did not constitute a serious medical need sufficient to support a claim of deliberate indifference to serious medical needs under § 1983). Because Plaintiff's claim fails under the objective prong, this Opinion does not reach the second prong of the deliberate indifference test. This claim is dismissed.

### b. Deliberate Indifference to Safety

The claim for deliberate indifference to safety is insufficient as well. To state a claim for deliberate indifference to safety, a plaintiff must allege: "(1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant acted with a sufficiently culpable state of mind . . . ." *Burgess v. Gerbing*, No. 15 Civ. 9256, 2017 WL 2992208, at *3 (S.D.N.Y. July 13, 2017) (quoting *Walker*, 717 F.3d at 125). Under the first prong, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Burgess*, 2017 WL 2992208, at *4 (quoting *Walker*, 717 F.3d at 125). Under the second prong, a plaintiff must show that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.

The Complaint fails to state a claim for deliberate indifference to Plaintiff's safety based on his exposure to harmful chemicals in the barbershop. The Complaint alleges that Plaintiff was ordered to lay face down on the floor, which caused him to come into contact with a dangerous chemical agent. The Complaint also alleges that defendants knew that there were innocent people in the barbershop when they sprayed the chemical agent and recklessly failed to

protect them. These bare allegations are insufficient to meet the objective prong of the deliberate indifference test. Defendants' efforts to restore order, which included ordering the inmates to lay on the floor were reasonable and based on a legitimate penological concern for the safety of the inmates, including Plaintiff. The assertion that Defendants should have been more careful to protect the inmates from the chemical agent residue on the ground sounds in negligence (rather than recklessness) and is not a constitutional violation. *See Perez v. City of New York*, No. 17 Civ. 0366, 2017 WL 684186, at *3 (E.D.N.Y. Feb. 17, 2017) (dismissing deliberate indifference to safety claim where a chemical agent got into plaintiff's eyes during a prison disturbance and he was denied medical treatment for two months because the use of the chemical agent was "reasonable to restore order," and noting that negligent failure to protect plaintiff from exposure to the chemical agent does not constitute a constitutional violation). Moreover, for the reasons discussed above, Defendants' conduct did not expose Plaintiff to an objectively unreasonable risk of serious damage to his health. Because the Complaint does not satisfy the objective prong of the deliberate indifference test, this Opinion does not reach the subjective prong with respect to the use of chemicals to restore order.

To the extent Plaintiff argues that Officer Santos acted with reckless disregard for Plaintiff's safety because Officer Santos brought Plaintiff to the barbershop despite Plaintiff's protective custody status, this argument is unpersuasive. The Complaint fails to allege any facts to support an inference that Officer Santos acted intentionally or recklessly, rather than negligently, by having Plaintiff and the other adult inmates wait in the barbershop while the adolescent inmates got their hair cut. *See Brown v. City of New York*, No. 13 Civ. 6912, 2017 WL 1390678, at *11 (S.D.N.Y. Apr. 17, 2017) (dismissing a deliberate indifference claim where, at worst, defendants negligently put plaintiff in the general prison population because "any

9

§ 1983 claim for a violation of due process requires proof of a *mens rea* greater than mere negligence"). In addition, Officer Santos' actions were not the proximate cause of Plaintiff's alleged injuries. That is, if unnamed officers had not sprayed the chemical agent or ordered Plaintiff to lay face down on the ground -- a superseding cause -- Plaintiff would not have suffered any harm as a result of Officer Santos' conduct. *See Poventud v. City of New York*, 750 F.3d 121, 159 (2d Cir. 2016) ("In all § 1983 cases, the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff[']s injury."); *Bogart v. City of New York*, No. 13 Civ. 1017, 2015 WL 5036963, at *5–*6 (S.D.N.Y. Aug. 26, 2015) ("[E]ven if a Section 1983 defendant's initial act is the 'but for' cause of some ultimate harm . . . , he is not legally liable for the harm if an intervening act is a 'superseding cause' that breaks the legal chain of proximate cause.") (relying on *Higazy v. Templeton*, 505 F.3d 161, 181 (2d Cir. 2007)).

Similarly, insofar as the Complaint can be construed to allege a claim of excessive force, that claim also fails because the Complaint does not allege the use of any force that was excessive. *See, e.g.*, *Candelario v. City of New York*, No. 12 Civ. 1206, 2013 WL 1339102, at *9 (S.D.N.Y. Apr. 3, 2013) (finding plaintiff's § 1983 claim of excessive force meritless because he did "not allege[] any facts that cou[ld] support an excessive force claim"); *Jenkins v. Elder*, No. 12 Civ. 4165, 2015 WL 5579699, at *4, *6 (S.D.N.Y. Sept. 22, 2015) (granting summary judgment as to excessive force claim under § 1983 where plaintiff failed to allege that defendant officers used more than *de minimis* force, or that one of the individual defendants had used any force against plaintiff).

### c. Equal Protection

Construed broadly, the Complaint alleges that Defendants violated Plaintiff's right to equal protection under the Fourteenth Amendment and § 1983, because those who were directly

involved in the altercation -- i.e., the adolescent inmates who were sprayed with the chemical agent -- were immediately decontaminated and afforded medical attention, but Plaintiff and others who experienced secondary exposure were forced to wait.

"The equal protection clause directs state actors to treat similarly situated people alike." *Giano v. Senkowski,* 54 F.3d 1050, 1057 (2d Cir. 1995)). To state a claim, plaintiff must allege "purposeful discrimination, directed at an identifiable or suspect class," *Giano*, 54 F.3d at 1057, or that, as "a class of one," he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," *see Vill. Of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curium). *See, e.g.*, *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) (vacating dismissal of Equal Protection claim under § 1983, in part, because the Complaint could be read to allege a class of one Equal Protection violation); *Davis v. McCready*, No. 14 Civ. 6405, 2017 WL 627454, at *5 (S.D.N.Y. Feb. 15, 2017) (dismissing Equal Protection claim for failure to allege membership in any particular class, or differential treatment compared with others similarly situated).

Viewing the alleged facts in the light most favorable to Plaintiff, the Complaint fails to allege facts to support a claim under § 1983 based on an equal protection violation. First, the Complaint does not allege that Plaintiff was a member of a suspect class (or any class), or that Plaintiff was treated differently than similarly situated individuals without a rational basis for the difference in treatment. To the extent that the Complaint alleges that Plaintiff was treated differently than the adolescent inmates in the barbershop, this is insufficient because the Complaint makes clear that Plaintiff and those adolescent inmates, who were directly involved in the altercation and were sprayed with the chemical agent were not similarly situated. Further, the Complaint does not assert that any difference in treatment was without a rational basis. To

11

the contrary, the Complaint suggests that there *was* a rational basis because the adolescent inmates came into direct contact with the dangerous chemical agent, whereas Plaintiff came into contact with it only after being told to lay on the ground. Second, the Complaint does not allege that Defendants purposefully delayed his medical treatment and permission to shower due to intentional or purposeful discrimination based on his membership in a protected class, or for some other purpose lacking a rational basis. Therefore, this claim is dismissed.

### d. Municipal Liability

The Complaint alleges that the City is liable because "it is not in their [Correction Officers'] training to protect the innocent in such incidents of chaos." This claim fails as a matter of law.

To hold a municipality liable for a constitutional violation under § 1983, a plaintiff must demonstrate that "the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978)); *accord Mitchell v. City of New York*, 841 F.3d 72, 80 (2d Cir. 2016). A "policy or custom" exists "where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a 'deliberate choice' . . . ." *Cash v. Cty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011); *Maldonado v. Schriro*, No. 15 Civ. 3409, 2016 WL 7243548, at *2 (S.D.N.Y. Dec. 14, 2016).

A city's failure to train or supervise constitutes "deliberate indifference" where three requirements are met: (1) "a policymaker knows to a moral certainty that her employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of

employees mishandling the situation"; and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Okin v. Vill. Of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009) (quoting *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992)). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (internal quotation marks omitted); *Tchatat v. Police Officer Liam O'Hara*, No. 14 Civ. 2385, 2017 WL 3172715, *8 (S.D.N.Y. July 25, 2017) (citing *Connick* to rule on a motion to dismiss failure to train claim).

"Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, a complaint does not suffice if it tenders naked assertions devoid of further factual enhancement." *Valdiviezo*, 2017 WL 1191528, at *3. "The mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Id.* (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)).

The Complaint fails to plead sufficient facts to state a claim for municipal liability under *Monell*. First, as discussed above, the Complaint does not allege an underlying violation of federal law. *See Cohen v. Walcott*, No. 13 Civ. 9181, 2017 WL 2729091, at *5 (S.D.N.Y. June 23, 2017) ("Where, as here, a plaintiff fails to establish an underlying constitutional violation there can be no liability under *Monell*."). Second, the Complaint does not include any factual allegations that could support any of the three *Walker* factors. The Complaint alleges, in a conclusory manner, that the alleged constitutional violations resulted from the City's failure to train its correction officers "to protect the innocent in such incidents of chaos." *See Brown*, 2017 WL 1390678, at *13 (dismissing *Monell* claim under § 1983 where plaintiff did not offer specific

factual allegations regarding the City's training for Department of Corrections personnel). Because the Complaint fails to plead adequately municipal liability under § 1983, all claims against the City are dismissed.

### B. State Claims

#### a. Negligence

To the extent that the Complaint can be read to plead negligence -- or any other claim -- under New York law, the Court declines to exercise supplemental jurisdiction. A district court may decline to exercise supplemental jurisdiction over claims arising under state law if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In considering whether to exercise its discretion, courts must weigh considerations of "[judicial] economy, convenience, fairness, and comity." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004). These factors will usually lead to dismissal of the non-federal claims when the federal claims have been dismissed at a relatively early stage. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Here, all of the federal claims against Defendants are dismissed on a Rule 12(c) motion before significant discovery has taken place. Therefore, the Court declines to exercise supplemental jurisdiction.

### C. Exhaustion

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Williams*, 829 F.3d at 122. Failure to exhaust under the PLRA is an affirmative defense rather than a pleading requirement, but "a district court may still dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the

14

complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Id.* (quoting *Jones v. Block*, 549 U.S. 199, 215 (2007)). Here, although it is clear on the face of the Complaint that Plaintiff did not file a grievance at the facility where he was incarcerated (in the initial Complaint, he checked the boxes indicating that he did not file a grievance), Defendants did not assert this affirmative defense in their Answer, and therefore, it is waived. *See Ruggiero v. Cty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (noting that a defendant may waive the defense of failure to exhaust); *accord Banks v. Cty. of Westchester*, 168 F. Supp. 3d 682, 693 n.3 (S.D.N.Y. 2016) ("failure to exhaust . . . may be waived by a defendant, or forfeited by failure to raise the defense") (internal quotation marks omitted). Accordingly, the Complaint is dismissed. To the extent that Plaintiff believes he can cure the pleading deficiencies identified above, he must exhaust his administrative remedies before refiling a new action in federal court.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions are granted, and the Complaint is dismissed in its entirety. The Clerk of Court is directed to close the motions at Docket Nos. 52 and 59, to leave this case open for resolution of the pro se Defendant's crossclaim and to mail a copy of this Order to pro se Plaintiff and pro se Defendant.

Dated: August 17, 2017
        New York, New York

                                            _____
                                            **LORNA G. SCHOFIELD**
                                            **UNITED STATES DISTRICT JUDGE**

15